Good morning, Your Honors. Andrea St. Julian, on behalf of the petitioner and appellant Sammy Page, I'd like to reserve four minutes for rebuttal. This very month is the thirteenth anniversary of the filing of the commitment petition against Sammy Page. For the last thirteen years, he's been placed in a state hospital without there ever having been a trial committing him. And even to this day, there is still no trial scheduled. Are you contesting the failure to hold the trial or what exactly? Well... Or the probable cause determination or the failure to make a new probable cause determination more recently, or exactly what, substantively? I would say what Mr. Page most wants is, and this goes to one of the uncertified issues that we've argued, is that the petitions on which or, excuse me, the two evaluations on which the petition was filed were both based on a diagnosis that is not and never was a valid mental health condition, disorder. So is your federal court claim a claim to review that probable cause determination, to argue for a new probable? I gather in 2012, he looked for a new probable cause determination. It had new evaluations. It was granted by the state court and then revoked. Yeah. Are you looking to review that? We're actually going back to the very inception because, unfortunately, the problem has continued. The evaluations on which the original commitment petition were based, again, is on a non-existent mental health disorder. And that is found clearly in case law. And we would like the original commitment petition dismissed. It can be dismissed without prejudice. They can refile if they can come up with two evaluators, again, using a valid mental health diagnosis, saying that he is a danger as a result of this mental health condition. And that is ultimately what Mr. Page is seeking in his petition. And getting to the younger abstention issue, which is what happened below, Mr. Page is the least powerful entity in the state court proceeding, yet the government in this appeal is blaming him for these 13 years of delay. Only the court can set a trial date and only the state can designate evaluators to update the evaluations so that the trial can move forward. The SVP, as enacted by California, allows indefinite pre-trial detention. That is a structural problem in the act itself. Has Mr. Page ever demanded trial? Mr. Page and I Simple question. Yeah, it is a simple. It appears Yes or no. Well, actually, if I may put it in context How about answering the question first and then putting it in context? I will. Your Honor, this is the problem. Mr. Page has Yes or no. Has he ever demanded trial? And then you could explain the answer. The simple question is the record as I have read it doesn't directly address that. And this is why I have to put it in context. Mr. Page, outside of the probable cause hearing nearly 13 years ago, has never been able to attend any of his hearings in the last 13 years. He's located in Fresno and the cases in Alameda County. So he doesn't know what's gone on at his hearing. He is an attorney, right? He has had four different attorneys on this case. And the attorneys represent him at the hearings? Yes. And he's had four different attorneys. So I'll amend my question. Yes. Has have any of Mr. Page's attorneys ever demanded trial in those 13 years? The record. And again, because he's had four different counsel, the last one was just appointed in 2017. What the only thing that we can go on is the minute orders that are in the report in the excerpts of record. And they say Record. Exactly. The excerpts No. And they say They are silent. They are silent. And that's why I cannot answer you as directly. They are silent. But this is something that I would like to point out to the Court. In the immediate appeal that was before this Court in 13-17352, the Court read the minute orders that were, had been filed up to this point. And the Court said, and this Court said, the Superior Court has continued Page's recommitment proceedings at least 28 times over the past 10 years. The record before us does not disclose the causes of the considerable delay. But now we have this declaration from the prosecutor that tells us, that purports to tell us that for most of them, it was a request by the defense counsel. Well, I, two, several things on that particular issue. One, it was wholly inappropriate for the Court to ask for that declaration. That is because counsel is acting as a witness in the case. That's totally inappropriate. I thought that was the DA that put that declaration in there. Yeah. The DA did. But I think the Court asked. But this proceeding is, the State's involved. The State is involved. The State is involved. But it was counsel, and counsel is essentially acting as a witness when it does that declaration. And it puts, my client at a distinct disadvantage because of the ---- But this was why I asked you, began by asking you, what you were really challenging. Because under a case like Arevalo, there, whether Younger applies wouldn't depend, it seems to me, on whether you're contesting essentially the pretrial detention or the failure to hold the trial as to the ultimate question. And I gather, at least in part from your answer, that you're challenging the pretrial detention on the ground that the original probable cause determination was invalid. What did happen in 2012? I mean, why the fact that there were further evaluations at that point which were contradictory to each other, including one of the original doctors changing his mind, why isn't that pertinent to whether he should still be the ---- whether it remains probable cause now? Because the two evaluations, and I'll just take it to the extreme. Even if ---- which I believe is probably going to happen. Even if there are additional evaluations, updated evaluations, and all of them say that he is not a danger, that still can't serve to undo the probable cause hearing. Well, it can't serve maybe as a matter of State law, but it could certainly suggest that his current, as a 2241 matter, that his current detention in State court is unconstitutional because there is no basis now for believing that he meets the standard, whatever the State court might think. And I agree. The problem, again, Your Honor, is that the State and only the State has the power to appoint evaluators to evaluate Mr. Page. But they did, in fact. There were evaluators in 2012. Yes, in 2012. That's, you know, that's, you know, seven years ago. That is seven years ago. But those evaluators, as I understand it, split two-two as to whether he met the State standard. Exactly. It was a double split. It was a double split. But one of the things that is of such concern is, again, the State keeps using these loopholes. If Mr. Page were committed, he would have had to have an evaluation every single year. But the State now says, well, he really hasn't had a commitment hearing, so we don't have to do evaluations every year. So why aren't you just challenging that whole system rather than having any focus on whether he's having a trial or not? I completely agree. And we have pointed that out in this case, that it is a systemic, chronic problem. But the 2241 focuses on his detention, right? The fact that he's detained right now. Yes. Not on whether he's going to have a trial in the future, necessarily. Yes. And that is what we are — that is what Mr. Page is asking for. His original detention is improper because in order — I mean, the basic — But you're also saying, although you're not saying it very much, that his continuing detention is improper because no one's ever looked at it again in the last 12 years. Yes. And when they did look at it, they split in a way that wouldn't have supported the detention under State law. Exactly. That is exactly — that is exactly — Then what happened? Why was that reversed? That's the part I don't understand. Why was what reversed? He was first granted — yes. Yeah. Because the Supreme Court case came out with a case called Riley where it said that there had to be a finding that there was actually a material — that the issue below had to actually have a material consequence. And you couldn't just automatically get a new probable cause hearing. And the court went — and so after Riley — But why isn't the issue whether you can keep somebody for 12 years without a new probable cause hearing? Because this is different — ordinarily, in an ordinary criminal proceeding, you wouldn't do that because the probable cause is to have something you did in the past, and it isn't going to change. But this — a definition does change. It absolutely does. As evidenced by the fact that you have these yearly evaluations if you're committed. Yes. And I would like to point out that Mr. Page is going to be 68 years old this year, all right? As is throughout all of the materials, all of the record, is that after the age of 60, it is almost — there is evidence and the statistics show that there is no more danger of committing any kind of crime. You sent us a probable cause — a 2018 letter recently that basically suggested that this isn't unusual. There's a lot of people. Very much. It is common. Are there other challenges going on? There have — they have tried. But again, what happens is, is that the argument starts focusing on the petitioner, the committee, and what he did or did not do. And that — and that — what that does is — What he did or didn't do, you mean like here in terms of whether he tried to get the — Yes. What he tried to do in terms of getting a trial instead of looking at this as being a chronic systemic problem. This is — there are — you can look through the cases that I've pointed out. You can look at a myriad of other cases. There are people who are post-deprivation for 10, 12, 13, 17 years. What does post-deprivation mean? Post-deprivation — since oftentimes they don't use detainee because it's not a criminal. So they say instead of a pretrial detainee, they say post-deprivation. But they're detained. But he's a pretrial detainee. And this is a chronic system. And the reason — a problem — and the reason why it is a chronic problem is because the act itself creates this loophole. But when you have the trial under these circumstances, are you — is the trial about whether the original — whether he was committable in 2006? Or is it about whether he's committable in 2019? It's supposed to be whether he's committable in 2019. But in fact, it is not. Because, again, even if we did evaluation after evaluation for years to come and every single one found that he was no longer a danger, the petition could not be dismissed because there were two evaluations 13 years ago that said he was. Well, I understand the petition couldn't be dismissed, but could he be found committable based on those two evaluations in 2006? Yeah, he could. He could. Even if — Even if there are updated petitions. Even if there are updated petitions saying that he is not, and that even if — You mean updated evaluations? I'm sorry. Updated evaluations. Updated evaluations. Even if there are updated evaluations, all of which say that he is no longer a danger, they can — Is anybody challenging that? Are you challenging that? He hasn't had — I'm not trying to get a handle on what you're doing. But he hasn't had a trial, so I can't challenge that yet. Are there trials taking place in the state court? There are some, but again, there are — but the state doesn't want to process all of these, and so what it does is it continues them for years on end. So there are not — And the California courts have not stepped in? No, the California courts have not stepped in. They have not stepped in. But the state — the record here is that it wasn't the state that was continuing it for all these years. I mean, that's your problem here. I am in your position that no, never mind, the state should have — this court should have done something. It's a viable position, perhaps. But there is no record here that the state was — is there any that the state is responsible for the delays, if that's what we're looking at? Well, one thing I would just like to start out by saying, and this is a rhetorical question for the court, but I would ask the court, what would happen if I asked for extensions on my opening brief for 13 years? We could say no. That's right. You absolutely — So I understand that's a viable position, but what is a viable position is to say it's up to the state. Yes. That the state caused the delay, the state meaning the prosecutor, because that's not this record. Yes. But in terms of the delay, all I can point to on the court is what the record is before And all of the minute orders that are before this court. All right. And they do not show — they do not show that. I'll give you a minute or two for rebuttal. Good morning, Your Honors. May it please the court, I'm Deputy Attorney General Max Feinstadt on behalf of Respondent. The petitioner in this case has continued his state court proceedings over 40 times. He has requested repeated extensions to file motions attacking the probable cause — All right. But he also tried to get a new probable cause hearing done, and that didn't work. And he had these new evaluations, and the new evaluations, as I understood it, would not have substantiated him — the probable cause determination, and then that was overruled. So, I mean, why are we focusing on the question of whether he — when he's going to have his trial as opposed to why he's been detained for 13 years on a 2006 probable cause determination in an instance in which time moves on, and we're not talking about the past the way we are in an ordinary criminal proceeding. We're talking about whether he remains in danger. Doesn't he have some sort of a right to another probable cause determination? And wasn't — wouldn't that be outside any younger problem? Right to another probable cause determination, Your Honor. Timely probable cause determination that — let's assume that he's still not going to have his trial for two more years. What's he doing detained in prison at this point, or not in prison? Well, he has a right to go forward on the trial as soon as — But based on a 2006 probable cause determination that he was a danger in 2006. Well — Why are we looking at whether it's a danger in 2019 as to whether he has to — has to stay detained now? The proceedings themselves would take into — the trial itself would take into account any updated evaluations that have been given, and the question would be, is he a danger as of 2019? Why isn't that the question as to whether — why doesn't he have some — Because the system seems totally out of control. And it would seem to me that — I don't know if she's making this claim. You may tell me this isn't the claim that's being made. But a viable claim might well be that under these circumstances, you need to have probable cause determinations, if you're going to keep them in prison that long, waiting for a trial, on some regular basis other than 19 years. Your Honor, those are claims that Petitioner is raising and litigating in state court. The question here is whether — Why wouldn't that — but — but he — but as — right now, our problem is younger, right? Arevelo and other — Gerstein and other cases are pretty clear that when you're — what you're complaining about is the pretrial detention and not the — what's the ultimate proceeding, that younger is not necessarily applicable. But that's not what he's complaining about. Well, that's what I'm asking you. Petitioner is attempting to dismiss the probable cause determination. He's attempting to dismiss the entire proceeding without going to trial. Well, what about without going through a new probable cause determination, which would at least be a timely one? To dismiss and reinstate a new probable cause determination? No, just to give him another probable cause determination. Now. Well, that's a matter of state law. That's something that he has to litigate — Well, why is that a constitutional problem, that he is sitting in — in detention for 13 years based on a 2006 determination of his dangerousness and never had another one? Because he has continued to waive any right to further process. He has continued to make a tactical decision to waive his right to trial. He could go to trial — That's trial. But that's — I'm not talking about trial. I'm talking about the determination that there's sufficient probable cause to keep him detained in the meanwhile. Again, Your Honor, I believe that in order to reach that, in order to reach the probable cause determination itself, that would require this Court to dismiss the state proceedings, to interfere with the state proceedings that are ongoing. And until this Court gets passed younger — Well, it would only require to tell the state they have to have a new probable cause determination. Because that's the heart of the state court proceedings. That's what he's currently incarcerated in in the entire — I'm sorry. I'm not understanding your answer. Why couldn't we tell — why couldn't we review the question whether you can keep somebody for 13 years when — when the issue is his current dangerousness and never have another determination of his current dangerousness even on a probable cause basis and keep him in prison or non-prison? He was the — Go ahead. Again, he has the option to litigate that in state court. He can make that claim that he's entitled to a new probable cause determination. He did make it. And apparently — and he got this — the superior court to agree,  Yes, Your Honor. And at this point, his option under the state court proceeding is to go to trial or to continue to push for other types of remedies, which is exactly what he's doing. And if that's an inadequate — constitutionally inadequate, why doesn't he get to argue to us that that's a constitutionally inadequate system? He has not made a claim that the system is constitutionally inadequate. He has made a claim that in his proceeding, his evaluations were improperly done, and therefore his petition should be dismissed. All right. So now you're just saying he hasn't made the claim. You're not saying that he couldn't make the claim. I'm not saying he couldn't make that claim, but that's not what's at issue here. He's asking for the dismissal of his proceedings based on his various claims against the original probable cause determination and his previous incarceration. Is that the certified question? The question before us is whether younger abstention applies. So the question here is whether the factors of younger, whether his proceedings in state court are ongoing, and whether there are — But what's the underlying claim that he is making, that he wants to present to the federal habeas court? That his commitment should be — his pending petition for commitment should be dismissed because it was improperly brought. That's not what the certified question says. The certified question's understanding of his claim, federal habeas claim, is that whether the 2006 recommitment probable cause determination violated his due process rights. Right? Is that the underlying claim, as we understand it? Yes. Your Honor, I don't believe that that is necessarily the complete reading of his claims. He's made multiple claims in his petition. He has an amended petition, correct? Is that what we're working off of? He has made several amendments, several supplemental petitions, and — I mean — OK, go ahead. Because what Judge Berzon's saying is she's trying to figure out what the underlying claim is because that bears on whether younger abstention is proper. So our first step is to figure out what's the underlying claim. And I'm new to this case because I don't ordinarily sit on this Court. So being new to the case, I look to what the certified issue is on page 4 of the blue brief. And it tells me what the underlying claim is. Well, looking to the underlying claim, as I understand it from the petition, is looking to the remedy that he's seeking, which is the dismissal of his State court proceedings. All right. And the answer may be that's not the remedy you're entitled to. But why does that lead to a younger refusal to hear the claim at all? Because any dismissal of the probable cause hearing would interfere with the State court proceedings. Because that's what he is currently litigating. This is a 2241. Yes, ma'am. It's a habeas. And I, by the way, have a question as to how and why younger even applies in habeas. But leaving that aside, I know we've applied it. But it's not transparently clear to me that it applies. Because what he — in fact, there are many instances when you're litigating habeas that what you're doing in habeas is interfering with a State court proceeding by definition. That's what a habeas is, right? Well, a habeas — yes, Your Honor. So if the question is whether the 2006 recommitment probable cause determination violated Appellant's due process rights, that was the order, the underlying question. Why couldn't the 2006 probable cause determination violate his due process rights because it's 13 years later and he should have had another one? Because Petitioner has caused the delay, Your Honor. Because why? Because Petitioner has caused the delay. That's as to the trial. But it doesn't — But it's — Habeas is about the detention. The detention is based on a probable cause determination. Right? Whether he can have a trial later or not have a trial later is a different question. Again, Your Honor, the commitment, the commitment itself and the reason why these proceedings go a certain way is Petitioner has a tactical reason to delay. The older he gets, the more likely he is to succeed at his SBP commitment trial. The —  But in 2012, Petitioner said, well, he did try to have a new probable cause determination. Is that right? He did. And he got one. He did. And it's — the evaluations then were that he shouldn't — there wasn't probable cause under the State standards. Yes, Your Honor. Okay. But he's still there. But still there as far as — He's still in detention. And even though under the State standards, he is — there is — in 2012, there wasn't a probable cause, even if in 2006 there was. But that's not what the State requires. The State requires — But that's the question. Is that a constitutionally valid procedure, that keeps somebody in detention even though there isn't probable cause, which we can tell from this record, because there used to be probable cause? Is that a constitutionally valid procedure? And is that barred by Younger? Yes, Your Honor. If Petitioner wants to move forward, he needs to complete this proceeding. He can ask for trial at any time. That would be an extraordinary circumstance if he had been demanding to go forward. But meanwhile, he's in detention on a basis of a probable cause determination that's 13 years old and has nothing to do with his status today. Again, Your Honor, our understanding is that he is not asking for release from detention pending trial. He is asking not to be tried. Well, fine. And we can say, ultimately, if we do address the merits, that's not what you're going to get. But why does that preclude us from — why does that mean that Younger bars the Federal Court from looking at this procedure and saying, is this a constitutionally valid procedure? That's simply not the claim that was made in this Court. Well, I just read you what — and Judge Feinerman read you what the certified issue was. Was it the recommitment of probable cause determination violated his appellant's due process rights? That's the certified issue. Is that not a correct issue? Whether the recommitment of probable cause determination violated the appellant's due process right, we grant the request for a certificate of appeal to be with respect to the following issue. Whether the district court properly dismissed pursuant to Younger v. Harris, appellant's petition challenging his continued detention. Challenging his continued detention. So as far as this order is concerned, he's challenging his continued detention. He's not challenging whether he can go to trial and be committed later. Again, his detention in this situation is a part of the proceeding. The reason a state court proceeding in the SBP context goes forward in a certain way is because the petitioner wants to delay and the state is willing to acquiesce to that delay because the objectives are being met. The state's objective, which is... Well, the objectives aren't even being met because apparently once he's committed, he gets a reevaluation every year and he's not getting that. But he no longer has the benefit of counsel at that point. So is the state's objective to keep somebody in detention indefinitely whether or not he's a danger to anybody? Is that their objective? No, Your Honor, but the state's objective is to keep somebody in detention until there is a determination that he is no longer a danger. And he has not had that determination. If he were to go... Well, in 2012, he did. He needs to have two evaluations that match for probable cause determination. But for trial, the question is decided by the trier of fact, whether or not one determination or another controls is something that's up to the trier of fact and not to simply whether the evaluations match each other. Isn't one way... I'm sorry. No. Isn't one way to stop the pretrial detention to have a trial? Yes, Your Honor. So if there's a trial, whatever happens, his pretrial detention ends? Yes, absolutely. Has Mr. Page or his lawyers, any of his four lawyers, demanded a trial? None of them have ever demanded a trial as far as we are aware. Okay. Next question. Is there a due process right to a probable cause determination pending trial? And I'd point you to Manuel v. City of Joliet from 2017, decided by the Supreme Court of the United States. I believe it said that there is no due process right to a probable cause determination. I don't know if you're familiar with that case. No, Your Honor, I'm not. Okay. All right. Then I won't ask you about it. I see I'm out of time, Your Honor. Yes. There are no more questions. I don't think so. I just want to submit here. Okay. Thank you. Thank you. Your Honors, first, I'd like to be very clear. We are asking for the probable cause determination to be vacated as well. Also, he is asking that the petition be dismissed, and it can be dismissed without prejudice. What petition? The commitment petition. The commitment petition. Okay. And it may be that we view the constitutional problem as narrower than that. And also— If we ever get to the merits. But with regard to Younger, assuming it even applies in habeas, it seems to matter whether what you're challenging is the ongoing procedure or something embedded in it that's causing the detention now. Sure. And also, to directly, I think, address what the Court is saying, is that to direct that a new probable cause hearing be held based on two recent evaluations does not enjoin the proceeding below. It doesn't enjoin it. So Younger wouldn't apply. Because it's required that the action of the Court has to enjoin the state court proceeding. And that would not enjoin it. So I would definitely agree with that. One thing I do also want to address is the argument that somehow this is a tactical decision on Mr. Page's part to delay the proceedings. I can't imagine that that would be a tactical procedure. It doesn't even— Well, one of the— It doesn't make sense. One of the holes here is you don't have any declaration from any of his lawyers about what, in fact, happened and why the case hasn't gone forward. There is—well, and there is nothing—and this is also where I strongly disagree with counsel. The record does not show that Mr. Page has continued this for 13 years. That is simply not in the record at all. Well, it is in the record in the sense that the DA's declaration says that. It's not in the court record, but there is a record that says it. Well, I would take exception with that. The DA's declaration was just a declaration as to when he was on the case, and he speculated as to what had happened all of the years earlier. That is not valid, Your Honor. So that does not show 13 years. But you could have corrected that by contacting the other four lawyers and saying, hey, did he ever demand trial? And if one of them said yes, then that's great because then you could solve the problem. You could say, yes, we did demand trial and we haven't gotten it for several years, and then I'm thinking this looks like an extraordinary circumstance under Younger. But that didn't happen. Like, are these people all dead or are they alive? No. I don't know, Your Honor. Okay. I don't know. And I don't know. Are you a pro bono counsel, by the way, or what is your role in this case? What is my role? I am just— No, no, no. I was appointed by this court to represent him on appeal, and that is— As pro bono counsel? No, not as pro bono counsel. CJA? Yes. I was a CJA panel. Okay. But—and one thing that I would request in the event that this court reverses is that a counsel also be appointed in the district court. That is really the problem that we're grappling with here at oral argument. If he had had counsel in the district court, we would have had a more appropriate record to bring before this court. Okay. We don't have it. Okay. Thank you. Thank you so much, Your Honor. Great. Okay. We are going—the court's going to take a short 10-minute recess.
judges: Paez, Berzon, Feinerman